UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

  v.                **DECISION AND ORDER**
                       12-CR-174S

ABDEL ABDULLAH,
MOHAMMED ALBANNAA,
MOHAMMED ALAWI,

        Defendants.

## I. INTRODUCTION

Defendants are charged in a single-count Indictment[1] accusing each of them with conspiring to possess with the intent to distribute, and to distribute, quantities of mixtures and substances containing a Schedule I controlled substance analogue as defined in 21 U.S.C. § 802(32), knowing that these mixtures and substances were intended for human consumption. See 21 U.S.C. § 846.  Presently before this Court are the objections of Defendants Abdullah and Alawi[2] to that part of the October 31, 2014 Report and Recommendation of Magistrate Judge Hugh B. Scott that recommended denial of Defendants' motion to suppress certain evidence.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may hear and submit a report and recommendation on any dispositive motion before the Court.  Local Rule of Criminal Procedure 59(b)(2) further requires that written objections to a magistrate

---

[1] The Indictment also contains a forfeiture allegation.
[2] Defendant Albanna did not file an objection.

judge's report "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." After *de novo* review of those portions of the report and recommendation to which proper objections are made, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." See 28 U.S.C. § 636(b)(1)(C); United States v. Gardin, 451 F. Supp. 2d 504, 506 (W.D.N.Y. 2006).

In contrast, general or perfunctory objections which are merely "a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge" are improper. Camardo v. General Motors Hourly-Rate Emp. Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y. 1992)(no "second bite at the apple" will be permitted). The district court may adopt those parts of the report to which no objection or an improper objection is raised so long as such are not clearly erroneous. Gardin, 451 F. Supp. 2d at 506.

**A.     Abdullah's Statements**

The Court has reviewed Mr. Abdullah's argument that Judge Scott erred in failing to recommend that his statements to law enforcement be suppressed, and finds that suppression is not warranted for the reasons stated in the Magistrate Judge's report. (Docket No. 151 at 14-15.)   Unlike United States v. Murphy, on which Defendant relies, here there is record evidence to support the conclusion that Mr. Abdullah understood the rights explained in the given Miranda warning. Cf. Murphy, 703 F.3d 182, 193-94 (2d Cir. 2010) (suppression warranted where evidence established that one defendant

understood only an *incorrect* Miranda warning, and where neither the agent nor a second defendant recalled if that defendant ever acknowledged the given warning). In addition to the agent's testimony that Mr. Abdullah appeared to understand the warnings, this Defendant in fact invoked his right to counsel during questioning. United States v. Boston, 508 F.2d 1171, 1175 (2d Cir. 1974) (defendant's exercise of Miranda rights supports finding of knowing waiver), *cert denied* 421 U.S. 1001 (2d Cir. 1975). Further, the record does not provide a basis for questioning the credibility determinations of Judge Scott with respect to witness testimony. See generally Grassia v. Scully, 892 F.2d 16, 19-20 (2d Cir. 1989).

**B.     Scope of the Search Warrant for the Speedy Market**

In his Objections, Mr. Abudullah incorporates by reference the arguments raised in his initial motion papers before the Magistrate Judge in support of his contention that all evidence obtained pursuant to the search warrant for 1799 Genesee Street should be suppressed. (Docket No. 156 at 4-5.) Such "a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge" fails to sufficiently state a proper objection. Camardo, 806 F.Supp. at 382 (W.D.N.Y. 1992); see Local R. Cr. Pro. 59(b)(2). This Court finds no clear error with Judge Scott's conclusion on this point, and therefore accepts this portion of the Report. Gardin, 451 F. Supp. 2d at 506-08 (a district court may adopt those parts of a report to which an improper objection is raised so long as such are not clearly erroneous).

**C.    Defendant Alawi's Consent to Search**

Similarly, the Magistrate Judge's findings and conclusion with respect to Mr. Alawi's ability to understand and consent to the search of 1221 McKinley on May 15, 2012 are also accepted. Contrary to this Defendant's contention, the record does not support the assertion that Mr. Alawi "specifically asked for an interpreter." (Docket No. 157 at 18.) Instead, it was testified that Defendant said "he couldn't read English, that if he could call somebody that could read English," and when the agent stated he would read the whole Consent to Search form, Defendant "acknowledged he would do that, that would be fine." (Docket No. 129 at 12 (Tr. 115); see Docket No. 129 at 94 (Tr. 197).) Testimony also established that the agent explained the purpose of the search to Defendant, including "brief aspects of the investigation." (Docket No. 129 at 94 (Tr. 197).)   Further, Mr. Alawi had several conversations with law enforcement and county officials in English prior to the date of the search. (Docket No. 131 at 21-24 (Tr. 315-18); Docket No. 129 at 67-71 (Tr. 170-74).)   In light of this, this Court finds that Dr. Schachter's opinion, which is based on an examination conducted almost three years prior to this Defendant's arrest, that Mr. Alawi could not comprehend the consent questions read to him in English[3] does not undermine either the credibility determinations of Judge Scott or the conclusion that, based on the totality of the circumstances, Mr. Alawi knowingly consented to the search.

---

[3]  These statements are: (1) "I have been asked to permit special agents of the Drug Enforcement Administration to search: (describe the person, places or things to be searched.);" (2) "I have not been threatened, nor forced in any way;" and (3) "I freely consent to this search." (Hearing Government's Exhibit 1.)

**D.     Scope of Defendant Alawi's Consent to Search**

Defendants next object to the Magistrate Judge's conclusion that he lacks standing to challenge the search of "the attic area." (Docket Nos. 156 at 3-4; 157 at 21.) To the extent that Defendant Alawi previously argued that he "did not consent to the search of the third floor attic/living area where another individual resided," (Docket Nos. 148 at 22), Judge Scott correctly stated that Mr. Alawi would not have standing to challenge the search of another person's apartment in which he claims no property interest. (Docket No. 151 at 12.) Nonetheless, Defendants are correct that there is no evidence that the third floor was a separate apartment.   This fact still works against them, however, because contrary to the conclusion in the Report, Agent Wright did not concede that the consent for the search was expressly limited to "the second and first floor areas." (See Docket No. 151 at 12 (citing Docket No. 129 at 43-45 (Tr. 146-48)).)   Instead, although the agent admitted the words attic and third floor were not discussed, he stated that "there was discussion about downstairs, upstairs." (Docket No. 129 at 44 (Tr. 147).) He further testified that "[Mr. Alawi] explained, he lived at the house for several years, he was living upstairs and downstairs." (Id. At 43 (Tr. 146).)  Accordingly, Agent Wright wrote "upstairs, downstairs" on the consent form meaning "the house, not being separated as apartments, the house . . . the upstairs part of the house and the downstairs part of the house." (Id. at 45 (Tr. 148.)   To that end, as Defendant Alawi himself acknowledges, the further testimony established that the "stairs to the attic were seemingly a part of Mr. Alawi's own apartment." (Docket No. 157 at 21; see Docket No. 129 at 97-99 (Tr. 200-02).) As such, there is nothing in the record that would contradict the common sense conclusion that Mr. Alawi's consent to search the "upstairs" as

5

discussed with the agent included the third floor as well. Defendant's objection is denied.

**E.   Consent to Search the Safe**

Defendant Alawi further objects to the Magistrate Judge's conclusion that the contents of the safe, which belonged to Mr. Alawi but was found in Mr. Abdullah's bedroom, should not be suppressed because Mr. Alawi did not object when Mr. Abdullah consented to law enforcement opening the safe. (Docket No. 157 at 21.) On this point the Court agrees with Defendant. "[T]he consent of the host should ordinarily be insufficient to justify a warrantless search when it is obvious that the searched item is the exclusive property of the guest." United States v. Isom, 588 F.2d 858, 861 (2d Cir. 1978).   Here, when asked, both Mr. Abdullah and Mr. Alawi confirmed that the safe belonged to Mr. Alawi.  There was no evidence that, although owned by Mr. Alawi, Mr. Abdullah could use or access the contents of the safe or that Mr. Alawi himself was asked permission to open the safe.  Indeed, law enforcement had to pry open the safe, either because of a dead battery or a lack of a key, and the testimony does not make clear that Mr. Alawi was in a position to witness either Mr. Abdullah's consent or the opening of the safe. (Docket No. 132 at 34-35 (Tr. 248-49)); see Isom, 588 F.2d at 861 (authority to consent to search of premises does not necessarily include authority to consent to forcible opening of locked metal box found therein).

In light of this, Mr. Alawi's general consent to the search of the "downstairs" cannot be said to include the locked safe. (Docket No. 151 at 14); see Florida v. Jimeno, 500 U.S. 248, 251-52, 111 S.Ct. 1801, 114 L. Ed. 2d 297 (1991) (distinguishing between the

opening of a closed container based on a general consent and the "breaking open of a locked briefcase"); United States v. Buitrago Pelaez, 961 F.Supp. 64, 68 (S.D.N.Y. 1997) (general consent to search office did not encompass permission to search locked safe). Law enforcement may not avoid an owner's potential refusal to permit a warrantless search by procuring the consent of a third party when that owner is readily available. See Georgia v. Randolph, 547 U.S. 103, 110, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006) ("the consent of one who possesses common authority over premises or effects is valid as against the **absent**, nonconsenting person with whom that authority is shared" (emphasis added)) (quoting United States v. Matlock, 415 U.S. 164, 170, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)).   Accordingly, Defendant's objection on this point is granted and the contents of the safe must be suppressed.

### III. CONCLUSION

For the reasons stated above, Defendants' objections are denied, with the exception of Mr. Alawi's objection to the recommendation that suppression of the safe contents.   The Report and Recommendation is otherwise accepted to the extent stated above.

### IV. ORDERS

IT HEREBY IS ORDERED, that Judge Scott's October 31, 2014 Report and Recommendation (Docket No. 151) is ACCEPTED in part and SET ASIDE in part as stated above;

FURTHER, that Defendant Abdullah's Objections (Docket No. 156) are DENIED;

FURTHER, that Defendant Alawi's Objections (Docket No. 157) are DENIED in part and GRANTED in part;

FURTHER, that the motions to dismiss of Defendants Abdullah (Docket Nos. 42, 54) and Albannaa (Docket No. 56) are DENIED;

FURTHER, that Defendant Alawi's motion to suppress (Docket No. 41) is GRANTED with respect to the contents of the safe and otherwise DENIED.

SO ORDERED.


Dated: February 25, 2015
       Buffalo, New York

                                          /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                              Chief Judge
                                    United States District Court